UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

FILED
00 DEC 21 PM 1:16
U.S. DISTRICT COURT
N.D. OF ALABAMA

CARLTON BUTLER,                )
                               )
    Plaintiff,                 )
                               )
vs.                            )   CV 00-BU-0842-S        ENTERED
                               )
SHELBY COUNTY; SHELBY          )                          DEC 21 2000
COUNTY REGIONAL JUVENILE       )
DETENTION CENTER,              )
                               )
    Defendants.                )

## MEMORANDUM OPINION

This case is presently before the Court on motion for summary judgment filed by Defendant Shelby County Regional Juvenile Detention Facility. Doc. 21. Plaintiff Carlton Butler has sued his former employer alleging race discrimination with regard to his non-selection for promotion and racial harassment. Defendant Shelby County Regional Juvenile Detention Center has filed a motion for summary judgment and Plaintiff has responded.

The Court has reviewed the record and determined that Defendant's motion for summary judgment (Doc. 21) is due to be granted.

**I.    SUMMARY JUDGMENT STANDARD**

On a motion for summary judgment, the court assesses all of the proof the parties can bring to bear in order to ascertain whether a genuine need for trial is

present. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986). Summary judgment is weighed heavily in favor of the non-movant; it is appropriate only if the court concludes that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). A party seeking summary judgment has the initial responsibility of informing the Court of the grounds for its motion and specifically identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323; 106 S. Ct. at 2553; *see also Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Once the moving party has satisfied its initial burden, the nonmoving party "must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." *Howard v. BP Oil Company*, 32 F.3d 520, 523 (11th Cir. 1994). In resolving whether a given factual dispute requires submission to a jury, a district court must view the record in the light most favorable to the nonmoving party and resolve all reasonable inferences in the nonmovant's favor. *Rooney v. Watson*, 101 F.3d 1378, 1380 (11th Cir. 1996) (citing *Hale v. Tallapoosa Co.*, 50 F.3d 1579, 1581 (11th Cir. 1995)).

## II.   **STATEMENT OF FACTS**

Plaintiff Carlton Butler applied for the position as a Youth Care Worker for the Shelby County Regional Juvenile Detention Facility on June 22, 1998. In his cover letter to Shelby County, Plaintiff stated he was "very interested in a career as a Youth Care Worker." Doc. 22, Exh. A. He was hired in September 1998 as a Youth Care Worker for the third shift. The third shift works from 11:00 p.m. until 7:00 a.m. Plaintiff contends that he applied for the position of Lead Youth Care Worker; however, the record contains no application for such position.

Debra RouLaine served as the Detention Center Manager. As Detention Center Manager, Debra RouLaine was responsible for the hiring and termination of employees at the Shelby County Regional Juvenile Detention Facility. She interviewed Plaintiff and they discussed his experience as a youth care worker at the Mt. Meigs facility.

Debra RouLaine hired Plaintiff for the position of Youth Care Worker for the third-shift. At the time he was hired, the position of Lead Youth Care Worker on the third-shift was vacant. Plaintiff co-employees on the third shift were Melvin Battle, a black male; Mary Scott, a black female; and Lois Truss, a black female. The supervisor of the third shift was Vicki Joiner, a white female. Joiner did not have responsibility to hire or terminate employees.

Plaintiff received a copy of Shelby County's Policies and Procedures at the time he was hired. During his training period, Shelby County personnel went over

all the Policies and Procedures, including the policy regarding reporting racial or sexual harassment. Shelby County Policies and Procedures states, in pertinent part, that "[a]n employee who has a complaint or concern relating to discrimination. . . or any other form of harassment, abusive, taunting, or demeaning behavior. . . should report the conduct to his or her appointing authority, department head, and/or the Personnel Supervisor . . . ." Doc. 22, Exh. E, § 11.2.

The job duties for Lead Youth Care Worker and Youth Care Worker are similar, except the Lead Youth Care Worker is responsible for paperwork and for "mak[ing] sure the shift ran smoothly and all the kids was [sic] safe." Doc. 27, Exh. A, p. 24. The job requirements for Youth Care Worker are set forth in the Juvenile Detention Officer I (Youth Care Worker) Shelby County Job Description. The Juvenile Detention Officer I Job Description states that one of the "essential functions" of the job is "perform[ing] daily housekeeping duties." Doc. 22, Exh. D. Plaintiff, however, contends that third shift employees were required to perform more housekeeping duties than either the first or second shift.

In October 1998, Plaintiff was promoted to temporary Lead Youth Care Worker for the vacancy left open for the third shift. Joiner, Plaintiff's supervisor, recommended him for the position. "Temporary Assignment" is defined by Shelby County's Policies and Procedures as follows:

> A classified service employee may be placed on temporary assignment by his or her appointing authority for the performance of job duties not associated with his or her present classification. This temporary assignment may be for

training purposes, accomplishing special projects, or filling temporary vacancies.

Doc. 22, Exh. E, § 2.13.

On November 17, 1998, the second shift Lead Youth Care Worker was terminated. Therefore, in November 1998, two Lead Youth Care Worker positions were available. Defendant contends that it posted these positions in November. Plaintiff did not apply for either position at that time. He testified that RouLaine, at the time he was given the temporary assignment, told him that he would be placed in the next available Lead Youth Care Worker position. She did not mention that he would be required to re-apply.

In December 1998, RouLaine received a list of the certified candidates for the Lead Youth Care Worker positions from Shelby County Personnel Department. This list was compiled from applications that had been reviewed and certified by the Shelby County Personnel Department. Plaintiff's name was not on the list of certified candidates. On January 13, 1999, RouLaine faxed her selections to Shelby County's personnel specialist. RouLaine selected Shirley Davis and Paula Vining -- both white females -- for the positions of Lead Youth Care Worker. Plaintiff testified that he did not know the positions were available until he heard that they had been filled. Plaintiff also testified that he felt that the other three Youth Care Workers on third shift were more qualified than him to be the Lead Youth Care Worker because they had more experience.

On June 23, 1999, Plaintiff received an Employee Notice of Formal Disciplinary Action for violating Shelby County Policy 5.5 (k), insubordination. Plaintiff was written up for refusing to be trained on how to use the floor buffer. he was suspended for three days.

Plaintiff heard Joiner, his supervisor, say "nigger" twice. Joiner had stood up, pointing a paper knife, which had been confiscated from a detainee, and said, "Nigger, I'll kill you." Doc. 27, Exh. A, p. 57. The second time he heard Joiner use the "N" word she referred to the third shift as the "nigger crew." *Id.* at 62   Plaintiff did not report Joiner's use of the "N" word.[1]

---

[1] Plaintiff's brief argues that Plaintiff reported the first incident to RouLaine. However, Plaintiff testified that he did not report the incident to RouLaine, but that she may have found out about the incident later.

A. ... I never told anybody at the facility ....

Q. What about Debra RouLaine?

A. ... I can't recall. I don't know. I don't remember. I think it was at a later date when she got that information.

Q. Did you tell her later?

A. I think it was in like a paper or something I sent over.

Q. Is it in connection with this suit that she found out?

A. I don't – I don't really know how she found out. I don't even know if she knows, to tell you the truth.

Q. You don't remember telling her?

A. No, I don't remember telling her.

During February 1999, a white co-worker brought a yoke that was similar to the type placed around the necks of slaves to the detention center. Plaintiff's reported this incident to Joiner. He also complained to RouLaine about the third shift being required to clean up and about "the watch tour." Plaintiff described the "watch tour" as "having to walk up and down stairs when we first started and look in pods that didn't even have kids in them." Doc. 27, Exh. A, pp. 63-64.

On November 14, 1999, Plaintiff submitted the following resignation to RouLaine and Joiner:

> This is my letter of resignation effective immediately. Due to extenuating circumstances I'm unable to work out a two weeks notice. Thank you for giving me the opportunity to work for Shelby County Regional Juvenile Detention Center.

Doc. 22, Exh. J.

### III. **DISCUSSION**

#### A.     **SECTION 1981**

Defendant contends that "§ 1983 contains the sole cause of action against state actors for violations of § 1981." Doc. 24, p.7 (citing *Butts v. County of Volusia*, 222 F.3d 891 (11th Cir. 2000). Therefore, Defendant argues that Plaintiff, who has not alleged a cause of action through § 1983, cannot maintain a § 1981 action.

---

Doc. 27, Exh. A, p. 61.

The Court agrees and, without opposition from Plaintiff, Plaintiff's § 1981 claims against Defendant Shelby County Regional Juvenile Detention Center are hereby DISMISSED.

### B. TITLE VII
#### 1. PROMOTION
##### a. Direct Evidence

Plaintiff contends that he has produced "direct evidence" of racial discrimination with regard to his failure to promote claim. Plaintiff submits the following evidence, which he claims is direct evidence of discrimination with regard to the failure to promote:

> First, his direct supervisor, a white female, came at him with a knife, saying, "nigger I'm going to kill you." Second, his direct supervisor stated that she did not mind working with the "nigger crew." The supervisor was referring to the third shift, in which she oversaw a crew made up of four African-American employees. In addition, the plaintiff can prove that these four African-American employees working on the third shift were made to perform housekeeping and other duties that other shifts did not have to perform. The evidence shows that there was animosity towards African-Americans at the Detention Center and this animosity reflected on the way that African-Americans were treated in the workplace.

Doc. 27, pp.12-13.

The Court finds that this evidence is not "direct" evidence that Plaintiff was not promoted to a lead worker position on the basis of his race. "[D]irect evidence does not include 'stray remarks in the workplace' or 'statements by nondecisionmakers' or 'statements by decisionmakers unrelated to the decisional process itself.'" *Price Waterhouse v. Hopkins*, 490 U.S. 228, 277, 109 S. Ct. 1775, 104 L. Ed.2d 268

(1989) (O'Connor, J., concurring). *See also EEOC v. Alton Packaging Corp.*, 901 F.2d 920, 924 (quoting *Price Waterhouse* )." *Pennington v. City of Huntsville*, 93 F. Supp. 2d 1201, 1208 (N.D. Ala. 2000).

The evidence recited above from Plaintiff's brief is not direct evidence; therefore, the Court will review Plaintiff's claims under the well-established *McDonnell Douglas* prima facie case standard.

### b. Circumstantial Evidence – Prima Facie Case

Defendant contends that Plaintiff's race discrimination claim based on his failure to be promoted to Lead Youth Care Worker is due to be dismissed because Plaintiff cannot establish that he applied for the position. "To establish a prima facie case of Title VII [race] discrimination in a promotional decision, a plaintiff must prove: (1) that [he] is a member of a protected minority; (2) that [he] was qualified and **applied** for the promotion; (3) that [he] was rejected despite these qualifications; and (4) other equally or less qualified employees who are not members of the protected minority were promoted." *Lee v. GTE Florida, Inc.*, 226 F.3d 1249, 1253 (11th Cir. 2000)(citing *Taylor v. Runyon*, 175 F.3d 861, 866 (11th Cir.1999)).

Plaintiff contends that he was told that he would be promoted to the lead positions and that he was not told that he would have to re-apply. He does not dispute the fact that he did not apply for the positions after they were posted. The Court finds that Plaintiff is not excused from applying for the positions "because they

were posted in an open manner, according to a well-articulated [County] policy." *Harris v. Warehouse Services, Inc.*, 77 F. Supp.2d 1240, 1247 (M.D. Ala. 1999). Nothing in the record indicates that Plaintiff was hindered or prevented from applying for the open and posted positions by actions of Defendant.

Therefore, the Court finds that Plaintiff has failed to establish a prima facie case of race discrimination with regard to Defendant's failure to promote Plaintiff to the lead worker positions. Defendant's motion for summary judgment as to Plaintiff's Title VII race discrimination claim with regard to promotion to the lead worker positions is GRANTED. Plaintiff's failure to promote claims are hereby DISMISSED.

### 2. RACIAL HARASSMENT

The Court assumes, without deciding, that the alleged harassment was severe or pervasive enough to create a racially hostile working environment. Defendant contends that Plaintiff's racial harassment claim is barred because he failed to report the harassment.

A plaintiff's hostile work environment claim may be barred if the employer demonstrates (1) that the employer exercised reasonable care to prevent and correct promptly any harassing behavior; and (2) that the plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise. *Faragher v. City of Boca Raton*, 524 U.S. 775, 808, 118 S.Ct. 2275, 2293 (1998). Therefore, an employer may be able to

avoid liability when the harasser is Plaintiff's supervisor if the harasser took no tangible employment action against Plaintiff.

> If [the harasser] was [Plaintiff's] supervisor, but did not take a tangible employment action against [Plaintiff], a two-part affirmative defense announced in *Ellerth* and *Faragher* applies. Under this affirmative defense, [the employer] is not liable if it "exercised reasonable care to prevent and correct promptly any sexually harassing behavior," and [Plaintiff] "unreasonably failed to take advantage of any preventive or corrective opportunities provided by [the employer] or to avoid harm otherwise." *Faragher*, 524 U.S. at 807, 118 S. Ct. 2275.

*Johnson v. Booker T. Washington Broadcasting Service, Inc.*, No. 99-6078, 2000 WL 1752177, *5 (11th Cir. Nov. 29, 2000).

### a. Employer's Reasonable Care to Prevent and Correct Discriminatory Harassment

The Eleventh Circuit Court of Appeals has stated:

> Accordingly, the Supreme Court implied that employers could meet the initial burden in determining whether they had exercised reasonable care to prevent sexual harassment by promulgating an anti-harassment policy. *See Faragher*, 524 U.S. at 807, 118 S. Ct. at 2293 ("While proof that an employer had promulgated an antiharassment policy with complaint procedures is not necessary in every instance as a matter of law, the need for a stated policy suitable to the employment circumstances may appropriately be addressed in any case when litigating the first element of the defense.") . . . . The Supreme Court further determined, when applying the new affirmative defense, that dissemination of an employer's anti-harassment policy was fundamental to meeting the requirement for exercising reasonable care in preventing sexual harassment. *See Faragher*, 524 U.S. at 808, 118 S. Ct. at 2293 (noting that it appeared the defendant employer would be unable to utilize the affirmative defense because it "had entirely failed to disseminate its policy against sexual harassment among [its] ... employees").

*Madray v. Publix Supermarkets, Inc.*, 208 F.3d 1290, 1297-98 (11th Cir. 2000).

The parties do not dispute that Shelby County had an explicit policy for reporting discriminatory harassment. Also, the parties do not dispute that this policy was appropriately disseminated to all employees, including Plaintiff. Therefore, the Court finds that Defendant has satisfied the first prong of the *Faragher* affirmative defense.

### b. Plaintiff's Unreasonable Failure to Use Anti-Harassment Reporting Policy

Plaintiff contends that he did not unreasonably fail to take advantage of the Shelby County anti-harassment policy because he reported the harassment. Plaintiff argues:

> Butler testified that he and his co-workers complained about the treatment they received to Vicki Joiner. In fact, Vicki Joiner was one of the main individuals who participated in the harassment of the plaintiff. When this failed to stop the treatment, Butler says he personally went to Debra RouLaine, the Detention Center Manager, to discuss the problems he was having at work. However, the treatment continued until the plaintiff left his job. These actions constitute a reporting of the harassment and along with the subsequent failure of the defendant to stop the harassing treatment act to bar the defendant from asserting the affirmative defenses . . . .

Doc. 27, p. 20.

Although the Court on motion for summary judgment must view all evidence in the light most favorable to the non-moving party, Plaintiff's recitation of his testimony is not supported by any generous reading of his deposition. Nothing in Plaintiff's testimony indicates that he complained to RouLaine, or anyone else,

about racial harassment. There was some testimony that he complained about "the work we was having to do," but there is no indication that he complained about harassment.

Shelby County Policies and Procedures states, in pertinent part, that "[a]n employee who has a complaint or concern relating to discrimination. . . or any other form of harassment, abusive, taunting, or demeaning behavior. . . should report the conduct to his or her appointing authority, department head, and/or the Personnel Supervisor . . . ." Doc. 22, Exh. E, § 11.2. Plaintiff testified that he was aware that Shelby County had an anti-harassment policy and yet, he did not follow this procedure. Moreover, he has offered no evidence that this failure to report the conduct of his supervisor was reasonable. See *Madray*, 208 F.3d at 1301-02.

Therefore, the Court finds that Defendant has satisfied the second prong of the *Faragher* affirmative defense.

### C.    DEFENDANT SHELBY COUNTY

The Court notes that the motion for summary judgment was filed by Defendant Shelby County Regional Juvenile Detention Center only. Defendant Shelby County did not join in the motion. Nevertheless, the reasons for dismissing Plaintiff's claims set forth above apply equally to the same claims asserted against Shelby County. Therefore, in a separate order, the Court will move, *sua sponte*, to dismiss the claims against Shelby County.

### IV.    CONCLUSION

Based on the foregoing, the Court finds that there is no disputed issue of material fact and that Defendant Shelby County Regional Juvenile Detention Center is entitled to judgment as a matter of law. Thus, the motion for summary judgment filed by Defendant Shelby County Regional Juvenile Detention Center (Doc. 21) is due to be granted. Plaintiff's claims against Defendant Shelby County Juvenile Regional Detention Center are due to be dismissed.

DONE this **21st** day of December, 2000.

H. DEAN BUTTRAM, JR.
UNITED STATES DISTRICT JUDGE